USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/9/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
CESAR VARGAS, on behalf of himself
and all others similarly situated,

               Plaintiff,

    v.                                  11 Civ. 7887 (DAB)
                                        MEMORANDUM & ORDER

HSBC BANK USA, N.A.,

               Defendant.
------------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Cesar Vargas moves this Court for conditional certification of a collective action and notice to the class pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). For reasons set forth herein, Plaintiff's Motion for Conditional Certification and Leave to Send Notice is DENIED.

I. BACKGROUND

    Plaintiff has been employed by Defendant as a Senior Fund Accountant, Level 1 since January 2008. (Vargas Decl. ¶ 3; Vargas Dep. 49:9-11.) There are ten teams of Fund Accountants in the AFS group, and Plaintiff has worked on Team 6 throughout his employment. (Vargas Decl. ¶ 5.) Plaintiff avers that there "are minimal differences between Fund Accountants and Senior Fund Accountants" and that a single job description covers both job

titles. (Vargas Decl. ¶ 4.) Plaintiff considers "the work performed by Fund Accountants to be primarily 'bookkeeping'" and asserts that his day-to-day responsibilities "involve minimal accounting judgment and discretion." (Vargas Decl. ¶ 7.) He has comparatively little client contact, and his work is approved by a supervisor before it is sent to the client. (Vargas Decl. ¶¶ 8-9.)

Plaintiff's understanding of his duties as a Fund Accountant is contradicted by his supervisor, and very few of the other Fund Accountants whose Declarations are now before the Court share his understanding of their duties and day-to-day activities.

Plaintiff's supervisor, Jared Bressman, explains that there "are four different levels of fund accountant" and that "each of the four different levels . . . is required to take different training." (Bressman Decl. ¶ 6.) "A Senior Fund Accountant Level 2 is required to have taken approximately 22 more training courses than a Fund Accountant Level 1, including courses in complex accounting processes" and "a number of courses on people skills and other [soft skills]." (Bressman Decl. ¶¶ 6-7.) By comparison to other Fund Accountants, Bressman expects the Senior Fund Accountants on his team "to handle more complex funds, handle more complex accounting issues, be able to address and resolve issues without supervision, be more involved with the

2

client relationship, review the work of others, provide training, coaching, mentoring and direction to more junior accountants, propose process improvements for the group, and produce high quality work while working independently." (Bressman Decl. ¶ 8.) The accounting services provided by the Fund Accountants working under Bressman also vary widely depending on the needs of the specific clients being served and the structure of the funds under management. (Bressman Decl. ¶¶ 9-15.)

On a day-to-day basis, Plaintiff spends 90% of his time preparing Net Asset Valuation ("NAV") packages for the funds he works on, which is a process that involves reconciling records and looking into the reasons for any discrepancies he finds. (Vargas Decl. ¶ 6.) One other Fund Accountant also spends about 90% of his time preparing NAV packages. (Zaslavsky Decl. ¶ 5.) Other Fund Accountants spend far less time preparing NAV packages and reconciling records. (Latham Decl. ¶ 17 (usually spends approximately 50% of time preparing NAV packages, though exact time varies from month to month); Milan Decl. ¶ 20 ("I recently was selected for a special assignment [which will last] a six-month period. For most of this time, I will not be preparing NAV packages."); Chea Decl. ¶ 5 ("I typically spend less than 5% of my time per month reconciling discrepancies" in fund valuation records).) Reconciliation of many funds has been outsourced to

3

an off-shore group, and the Fund Accountants who handle those funds accordingly do little reconciliation - though the actual time required varies widely. (Bressman Decl. ¶ 17 ("Fund [A]ccountants on my team should not be spending a lot of time performing reconciliation because, for their funds, an off-shore group . . . handles reconciliation and much of the resolution of disrepencies.") ; Stanton Decl. ¶ 8 ("For some less complicated funds, the [off-shore group] can handle approximately 98% of the work.  For other funds, they handle much less because the issues are more complex or require client contact.").)

Plaintiff and one other Fund Accountant aver that they have no supervisory duties beyond occasionally assisting with training and that they are not aware of any Fund Accountants who have supervisory authority over other Fund Accountants.  (Vargas Decl. ¶¶ 10; Zaslovsky Decl. ¶ 8.)  Numerous other Fund Accountants testified to having supervisory responsibilities with respect to other Fund Accountants.  (See Milan Decl. ¶ 7 ("For hedge funds with daily deliverables, I act as a supervisor in reviewing and approving the valuations prepared by others."); Stanton Decl. ¶ 7 ("When I became a Senior Fund Accountant, I started to review the work of other Fund Accountants."); Ryabovol Decl. ¶10 ("I currently have a junior accountant assigned to work with me to prepare the NAV package for my fund. I have assigned work to him,

4

trained him on what needs to be done, and reviewed his work"); Latham Decl. ¶16 ("Last year, as a Senior Fund Accountant, Level 2, I started assuming supervisory responsibilities. Instead of preparing the NAV, I performed the role of the supervisor in reviewing the NAVs prepared by other fund accountants."); Dublin Decl. ¶5.) Similarly, Plaintiff's supervisor testified that there "are two Senior Fund Accountants on [his] team . . . who perform a supervisory review of the work of other fund accountants on the team. . . . They also handle a lot of questions escalated to them from the other fund accountants, and provide coaching, mentoring, and direction to the other fund accountants on the team." (Bressman Decl. ¶ 19.)

Plaintiff and Dennis Zaslovsky are not the primary client contact on their funds. (Vargas Decl. ¶ 9; Zaslovsky Decl. ¶ 7.) A number of other Fund Accountants are the primary client contact for the funds they manage or otherwise have regular, substantial interactions with clients. (See Chea Decl. ¶6 ("I am the primary contact with my clients at HSBC."); Stanton Decl. ¶15 ("Some Senior Fund Accountants are the primary contact with the client for their funds. The level of client contact depends on the fund accountant and the client."); Ryabovol Decl. ¶13 ("I am the primary contact at HSBC for the clients I work with."); Milan Decl. ¶18 ("I often respond directly to the client without first

5

involving my manager."); Stanton Decl. ¶15 ("As a Senior Fund Accountant, I handled a wide variety of client questions. These included substantive questions that required me to analyze and resolve issues or provide guidance to the client on a particular issue."); Tamayo Decl. ¶11 ("Fund Accountants and Senior Fund Accountants on my team work directly with the client to answer their questions," including "substantive issues that require some analysis by the Fund Accountant").

II. DISCUSSION

As an initial matter, it is not at all clear that Plaintiff has standing to pursue claims on behalf of employees who work or worked under job titles Plaintiff has never held but that Plaintiff alleges require duties identical to those he performs. E.g. Simel v. JPMorgan Chase, No. 05 Civ. 9750 (GBD), 2007 WL 809689 (S.D.N.Y. 2007) (finding that plaintiff, a financial advisor, lacked standing to pursue claims on behalf of financial advisor trainees, since he had not been a trainee within the statute of limitations). This is especially true in light of the record evidence contradicting Plaintiff's assertion that all four positions are functionally equivalent. (See Bressman Decl. ¶ 6 (senior positions require more training, including training in complex accounting processes); Ryabovol Decl. ¶ 7 ("My job

6

responsibilities today are different than when I was a junior accountant. I am handling more complex funds, and I need to have more advanced accounting knowledge, more advanced knowledge of GAAP, and more advanced knowledge of hedge fund investments and how they perform."); Milan Decl. ¶ 16; Latham Decl. ¶ 12.) Nevertheless, the Court need not reach Plaintiff's adequacy as a class or collective representative at this time, in light of the absence of any opt-in plaintiffs and the Court's determination herein that Plaintiff has failed to identify any other potential members of the class or collective he purports to represent. On proper Motion, the Court will revisit Plaintiff's adequacy as class representative if indeed a class or collective materializes in the course of discovery.

A. FLSA Collective Action Certification Standard

Under Section 216(b) of the FLSA, employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give consent in writing "to become . . . a party [to the action] and such consent is filed [with the Court]." 29 U.S.C. § 216(b). "District courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers

7

v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

Courts in the Second Circuit generally follow a two-step method of certification in an opt-in collective action under the FLSA. Myers, 624 F.3d at 555. At the first step, the court considers whether to endorse the sending of notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. Id. At the first stage, which ordinarily takes place before extensive discovery, courts require plaintiffs to make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id.; see, e.g., Jackson v. New York Telephone, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (noting that "[t]he inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.") In a FLSA exemption case, plaintiffs are at the first step required to make some showing that "there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. Myers, 624 F.3d at 555.

"At the second stage, the district court will, on a fuller

8

record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs", and the court will "de-certify" the collective action if the record reveals that they are not. Myers, 624 F.3d at 555. If the collective is de-certified, the opt-in plaintiffs' claims may be dismissed without prejudice. Id.

In exercising its discretion at the conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Cunningham v. Elec. Data Sys., 754 F.Supp.2d 638, 644 (S.D.N.Y. 2010) (internal citations and quotations omitted).

B. Similarly Situated Employees

Plaintiff seeks to certify a collective action on behalf of all current and former employees who work or worked as Fund Accountants for the Alternative Fund Services group at Defendant at any time beginning three years prior to the filing of this action through the entry of judgment in this action. The proposed collective includes employees working under three titles Plaintiff has never held, in addition to employees who share Plaintiff's title. Plaintiff alleges that all employees holding

9

any of the four job titles have essentially similar duties and that all such employees were miscategorized as FLSA exempt at all relevant times.[1]

At this stage in the litigation, Plaintiff need only make a "modest factual showing," that similarly situated potential plaintiffs exist. Myers, 624 F.3d at 555. Plaintiff can make this showing with allegations and testimony of FLSA violations, coupled with evidence that policies governing employees apply equally to other locations and employees. Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (certifying based on declarations of other employees alleging similar FLSA violations and a wage policy that was uniform across all locations); Lynch v. United States Auto. Ass'n, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) (certifying based on depositions and declarations by a single insurance investigator plaintiff as well as documentary evidence that employment conditions were similar for all investigators); Patton v. Thomson Corp., 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (certifying based on plaintiff's allegations

---

[1] Though Plaintiff alleges that the same job description applies to all four positions, and though the Court accepts the truth of that allegation for present purposes, the Court notes that the job description document provided by Plaintiff is titled "Fund Accountant - Senior Fund Accountant" and thus may apply only to the two Senior Fund Accountant positions. See Amin-Giwner Decl., Ex. D.

that she had been improperly classified as exempt along with documentary evidence of uniform exemption policies).

Here, Plaintiff provides just one Declaration in addition to his own which tends to support his description of his job duties.[2] Defendant provides an additional nine Declarations from Fund Accountants and supervisors, including Plaintiff's own supervisor, who testify that their duties, professional qualifications, and employment conditions are largely dissimilar to those described by Plaintiff.

Plaintiff argues that it is inappropriate for the Court to consider the Declarations submitted by Defendant in determining whether similarly-situated individuals exist who might be expected to opt in as plaintiffs in this action.  However, in light of the fact that the Court previously ordered six weeks of discovery on this very issue, at Plaintiff's request, the Court sees no reason why it should not consider the entire record in determining whether to exercise its discretion to order the

---

[2]Though not dispositive, the Court notes that the only other Fund Accountant who has offered a Declaration in support of Plaintiff's position has nevertheless declined to become an opt-in plaintiff in this action.

11

sending of a notice to other potential plaintiffs.[3]

Here, without reaching the merits of Plaintiff's suit or drawing any conclusions about the credibility of Plaintiff's allegations, it is evident that different Fund Accountants have very different understandings of their own job duties and spend their time on the job doing very different things, all of which appear consistent with the broadly-worded job description which Plaintiff alleges covers all four positions at issue. It is equally clear that Plaintiff has identified no other Fund Accountant whose duties and qualifications are similar to his own who might become an opt-in plaintiff, despite having been granted six weeks of discovery focused on that very question.

Accordingly, the Court DENIES Plaintiff's Motion for Conditional Certification and DENIES Plaintiff's request for leave to send notice to potential opt-in plaintiffs.

---

[3] Opt-in plaintiffs may come forward even if a Court-ordered notice is not sent. See Myers, 624 F.3d at 555 n.10 (noting that "certification" of a FLSA collective merely denotes the facilitation of notice, that "Section 216(b) does not by its terms require any such device, and [that] nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action."

III. LEAVE TO AMEND

By letter dated July 23, 2012, Plaintiff informed the Court that Defendant closed the entire AFS group and laid off all employees of that group (including the members of the purported class herein) on or about June 30, 2012. Plaintiff alleges that the layoff was in retaliation for his filing of this lawsuit, and requests a pre-motion conference concerning a proposed motion to amend the Complaint to allege a claim for retaliation. Plaintiff also complains that Defendant has provided only a single email in response to his requests for discovery concerning the planning of the layoff.

By letter dated July 27, 2012, Defendant informed the Court that it opposes Plaintiff's request for a conference and Plaintiff's proposed Motion to Amend. Specifically, Defendant argues that Plaintiff has unduly delayed his request to amend, since he has been aware of the pending layoff since at least January 30, 2012. Defendant further informed the Court that the email to which Plaintiff referred in his initial pre-motion letter was dated October 18, 2011 – before Plaintiff filed this case on November 5, 2011 – and that the email indicated that a decision to close the AFS group had already been made by that date.

By letter dated August 2, 2012, Plaintiff argues that the

13

email is not conclusive proof that the layoff was planned prior to the filing of this lawsuit. Plaintiff further argues that his request to amend is timely in light of the fact that the layoff did not actually occur until recently, even though Plaintiff was informed of its pendency in January.

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, a party may only amend the pleadings by leave of court, and "leave shall be freely given when justice so requires." Leave to amend should be granted absent evidence of futility, undue delay, prejudice, or bad faith on the part of the party seeking leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1967).

Here, any amendment to allege a claim for retaliation would be futile, in light of the email indicating that a decision "to exit the fund administration business in New York" (and thus to lay off all fund administrators, including all Fund Accountants who are potential plaintiffs in this matter) was made before this action was filed. Accordingly, leave to amend is DENIED.

IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Conditional Certification and Leave to Send Notice is DENIED.

Leave to amend the Complaint to allege a claim for

14

retaliation is DENIED as futile.

Discovery shall proceed according to the Scheduling Order issued today.

SO ORDERED.

DATED:   New York, New York
         *August 9*, 2012

*Deborah A. Batts* (signature)
Deborah A. Batts
United States District Judge